IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

  v.                                      CRIMINAL NO. 1:12CR25-2
                                              (Judge Keeley)

**JOHN N. SKRUCK,**

      **Defendant.**

**ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 382]
AND DENYING DEFENDANT'S MOTIONS TO SUPPRESS
[DKT. NOS. 363 AND 381]**

Pending before the Court are the motion to suppress and supplemental motion to suppress (Dkt. Nos. 363 and 381) filed by the defendant, John N. Skruck ("Skruck"), and the report and recommendation ("R&R") (Dkt. No. 382) of the Honorable John S. Kaull, United States Magistrate Judge, recommending that the Court deny Skruck's motion. For the following reasons, the Court **ADOPTS** the R&R and **DENIES** the motion.

**I.**

In August 2010, Skruck's co-defendant, Jeffrey Paglia ("Paglia"), created Jemrose, Inc, the parent company of Hot Stuff and Cool Things ("HSCT"), a retail store with locations in Clarksburg and Buckhannon, West Virginia (Dkt. No. 363-1 at 1; Dkt. No. 382 at 4). Allegedly, Skruck was Paglia's "partner," and had supervisory authority over employees at HSCT, although he

apparently spent more time at the Buckhannon store than at the Clarksburg store (Dkt. No. 382 at 4).

From August 2011 until April 2012, HSCT contracted with Waste Management of West Virginia ("Waste Management") for trash collection services at the Clarksburg store (Dkt. No. 382 at 5). Waste Management provided HSCT with a two-cubic-yard front load dumpster that contained a bar lock for the customer's use. Id. The dumpster was located approximately twenty-five to thirty feet away from the HSCT store, in between HSCT and Huntington Bank. Id. at 6. Waste Management leased the dumpster to HSCT only (Dkt. No. 383 at 2).

In Spring 2011, Paglia, Skruck, and HSCT became the target of a drug task force investigation (Dkt. No. 363-2 at 6). During the course of that investigation, Lieutenant Brian Purkey of the Bridgeport Police Department and other members of the Greater Harrison County Drug Task Force ("the Task Force") conducted more than twelve[1] warrantless trash pulls from the dumpster located outside the HSCT store (Dkt. No. 382 at 6). The Task Force

---

[1] Skruck contends Lieutenant Purkey testified that he conducted in excess of fifteen to twenty trash pulls (Dkt. No. 383 at 2).

conducted at least one trash pull every other week, but, occasionally, one or more trash pulls per week. Id.

Lieutenant Purkey testified that he never found the dumpster to be locked, and that other officers conducting trash pulls in his absence never reported it to be locked. Id. During one trash pull, Lieutenant Purkey located trash from Huntington Bank, and during a particularly cold night he found other individuals rummaging through the dumpster for food. Id. He noted that the trash in the dumpster was piled so high at times that the lid would not close. Id. Lieutenant Purkey applied for and obtained a search warrant based on the evidence obtained from the trash pulls (Dkt. No. 382 at 6; Dkt. No. 363-2).

On April 17, 2012, a grand jury returned an indictment charging Skruck and his co-defendants with various drug-related and money laundering violations (Dkt. No. 1). On February 5, 2013, the grand jury returned a superseding indictment, charging Skruck with additional drug and money laundering violations (Dkt. No. 218).[2]

---

[2] At that point, Skruck's co-defendants had pleaded guilty. Paglia pleaded guilty on November 26, 2012 (Dkt. No. 166), and Derrick Calip and Jeremia Phillips pleaded guilty on November 5, 2012 (Dkt. Nos. 144 and 146). Corporate defendants Jemrose, Inc. and Pag-Corp, Inc. were dismissed on the motion of the government on September 10, 2013 (Dkt. No. 299).

**ORDER ADOPTING REPORT AND RECOMMENDATION AND
DENYING DEFENDANT'S MOTIONS TO SUPPRESS (DKT NOS. 363 AND 381)**

On the eve of trial, scheduled for May 14, 2013, Skruck absconded from the Northern District of West Virginia (Dkt. No. 264). Nine months later, on January 18, 2014, the United States Marshal Service apprehended him in the District of New Mexico (Dkt. No. 382 at 2). On February 12, 2014, Skruck's counsel withdrew, and Magistrate Judge Kaull appointed Harry A. Smith, Skruck's current counsel, on February 14, 2014 (Dkt. Nos. 327 and 328). On March 13, 2014, the Court continued Skruck's trial (Dkt. No. 338). On July 31, 2014, the Court again continued the trial to its current date of January 12, 2015 (Dkt. No. 355).

Subsequently, on October 16, 2014, Skruck's counsel filed a motion to suppress evidence obtained through the warrantless dumpster searches (Dkt. No. 363). On November 12, 2014, Magistrate Judge Kaull held a hearing to consider the motion to suppress (Dkt. No. 378). Lieutenant Purkey and Cary Riddle, District Manager for Waste Management, testified at the hearing (Dkt. No. 382 at 4). Thereafter, on November 19, 2014, Skruck filed a supplemental motion to suppress (Dkt. No. 381).

Skruck argues that, as an employee of HSCT, he had a reasonable expectation of privacy in the locked dumpster, and that the evidence seized as a result of the search warrant obtained by

Lieutenant Purkey should be excluded as fruit of the poisonous tree because the search warrant was based, in large part, on evidence obtained from the trash pulls (Dkt. No. 363-1 at 1-3). Co-defendants Jeremia Phillips and Derrick Calip corroborate that the HSCT dumpster was intended to be locked and sometimes was locked, but that on other occasions it was left unlocked (Dkt. No. 381 at 1-2). For its part, the government argues that Skruck does not have a legitimate expectation of privacy in the dumpster, which was left unlocked (Dkt. No. 367 at 1).

Magistrate Judge Kaull issued his R&R on November 20, 2014, recommending that the Court deny Skruck's motion to suppress (Dkt. No. 382). On December 4, 2014, Skruck objected to the R&R, contending that Skruck had a subjective expectation of privacy that society is prepared to accept as objectively reasonable (Dkt. No. 383 at 1-2). Skruck also clarifies a few facts developed during the hearing, but, otherwise concedes that the R&R "accurately restates the contentions of the parties." Id. at 2. On December 4, 2014, the government filed a concurrence with the R&R (Dkt. No. 384).

**II.**

The Court "shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); <u>see</u> <u>also</u> <u>Farmer v. McBride</u>, 177 Fed. App'x 327, 330-31 (4th Cir. 2006) ("The district court is only required to review <u>de novo</u> those portions of the report to which specific objections have been made . . . ."). "As to those portions of a recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are 'clearly erroneous.'" <u>Clark v. United States</u>, No. 5:05CV147, 2008 WL 2704514, at *3 (N.D.W. Va. July 3, 2008). Finally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**III.**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment applies to commercial premises as well as to private homes. <u>See</u> <u>See v. Seattle</u>, 387 U.S. 541, 543 (1967).

**ORDER ADOPTING REPORT AND RECOMMENDATION AND**
**DENYING DEFENDANT'S MOTIONS TO SUPPRESS (DKT NOS. 363 AND 381)**

A defendant may only challenge a search or seizure on Fourth Amendment grounds if he has a reasonable expectation of privacy in the area searched. Rakas v. Illinois, 439 U.S. 128, 134, 99 S.Ct. 421, 425 (1978) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.") (internal citations omitted). See also Rawlings v. Kentucky, 448 U.S. 98, 104-06, 100 S.Ct. 2556, 2561 (1980) (stating that a defendant bears the burden of proving both that the search was illegal, and also that he had a legitimate expectation of privacy in that area).

In determining whether the defendant has a reasonable expectation of privacy, the Court must consider "an analysis of the defendant's interest in and control of the area searched, his subjective expectation of privacy in the area as evidenced by his efforts to ensure that privacy, and society's willingness to recognize his expectation as reasonable." United States v. Horowitz, 806 F.2d 1222, 1225 (4th Cir. 1986).

Garbage left for collection outside the curtilage of a home is generally unprotected by the Fourth Amendment. California v. Greenwood, 486 U.S. 35, 37, 108 S.Ct. 1625, 1627 (1988). In Greenwood, the Supreme Court of the United States held that the

search and seizure of garbage left out at the curb for collection did not violate the Fourth Amendment because "[i]t is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, snoops, and other members of the public." Id. at 40-41. "Accordingly, having deposited their garbage 'in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it,' respondents could have had no reasonable expectation of privacy in the inculpatory items they discarded." Id.

In the context of commercial property, it is well-established that "a commercial proprietor has a reasonable expectation of privacy only in those areas where affirmative steps have been taken to exclude the public." United States v. Hall, 47 F.3d 1091, 1096 (11th Cir. 1995) (citing Air Pollution Variance Bd. Of Colo. v. W. Alfalfa Corp., 416 U.S. 861, 865, 94 S.Ct. 2114, 2115 (1974)). In Hall, the United States Court of Appeals for the Eleventh Circuit held that the defendant did not have a reasonable expectation of privacy in bagged, shredded trash in a garbage dumpster located forty yards down a private road. Id. at 1093. The dumpster was within "commercial curtilage" adjacent to an office building owned by Bet-Air. Id.

Of significance, the Eleventh Circuit stated that the defendant had a subjective expectation of privacy in the discarded garbage, but rejected the idea that society was prepared to accept the defendant's expectation as objectively reasonable. Id. It explained that the occupant of a commercial building, as opposed to the occupant of a residential building, has an additional duty to "affirmatively [bar] the public from the area" to preserve his Fourth Amendment protections. Id. at 1095. Because Bet-Air "did not take sufficient steps to restrict the public's access to its discarded garbage," its subjective expectation of privacy was not one society was prepared to accept as objectively reasonable. Id. at 1097. See, e.g., United States v. Dunkel, 900 F.2d 105, 106 (7th Cir. 1990), vacated and remanded on other grounds by Dunkel v. United States, 498 U.S. 1043, 111 S.Ct. 747 (1991) (affirming the denial of the defendant's motion to suppress where evidence was retrieved from a common dumpster adjacent to his office building, which "housed two other dentists and five business tenants" and where anyone could walk up to the dumpster); State v. Yakes, 595 N.W.2d 108, 111-12 (Wis. 1999) (finding no reasonable expectation of privacy in a commercial dumpster when access to the dumpster was not restricted and the proprietor allowed others on to the property).

**ORDER ADOPTING REPORT AND RECOMMENDATION AND
DENYING DEFENDANT'S MOTIONS TO SUPPRESS (DKT NOS. 363 AND 381)**

After considering Skruck's "interest in and control of the area searched, his subjective expectation of privacy in the area as evidenced by his efforts to ensure that privacy, and society's willingness to recognize his expectation as reasonable," the Court concludes that Skruck does not have a reasonable expectation of privacy in the dumpster next to HSCT. <u>Horowitz</u>, 806 F.2d at 1225.

Skruck clearly did not control the dumpster in a manner that excluded the public. HSCT's dumpster sat approximately twenty-five to thirty feet away from the side of the store, between HSCT and Huntington Bank, and was not blocked by a fence or other obstacle (Dkt. No. 382 at 6). This area, as Magistrate Judge Kaull found, was "open to the public" and accessible to anyone. <u>Id.</u> at 11. Indeed, Lieutenant Purkey confronted individuals rummaging through the dumpster on one occasion, and pulled trash from Huntington Bank on another. <u>Id.</u> Shirley Sheets, a bookkeeper for HSCT, advised Skruck's counsel that "there were concerns with interlopers putting trash in the dumpster," further bolstering Magistrate Judge Kaull's conclusion that the dumpster was publicly accessible (Dkt. No. 381 at 2).

Insofar as Skruck attempts to distinguish the instant case from <u>Hall</u> by stating that the HSCT dumpster was obviously on private property, the Court rejects the notion that it was obvious

10

USA V. JOHN SKRUCK                                          1:12CR25-2

**ORDER ADOPTING REPORT AND RECOMMENDATION AND
DENYING DEFENDANT'S MOTIONS TO SUPPRESS (DKT NOS. 363 AND 381)**

to the public that access to the dumpster was restricted (Dkt. No. 383 at 4). Although it may have been obvious that the dumpster belonged to HSCT, the facts established that interlopers did use the dumpster on at least two occasions, in addition to the multiple trash pulls conducted by the Task Force. HSCT must take affirmative steps to exclude the public from its commercial property, above and beyond mere proximity to the building. See Hall, 47 F.3d at 1096.

In addition, HSCT did not utilize the lock on the dumpster consistently. Cary Riddle testified that Waste Management charged HSCT an extra $ 10 per month for the locking capability on the dumpster (Dkt. No. 382 at 5). On at least twelve occasions, however, Lieutenant Purkey testified that he or other officers found the dumpster unlocked. Id. at 6, 11. Co-defendants Jeremia Phillips and Derrick Calip both informed Skruck's counsel that, although HSCT intended to lock the dumpster, it was occasionally unlocked (Dkt. No. 381 at 2). Finally, Lieutenant Purkey found trash from Huntington Bank in the dumpster, an occurrence which would only be possible if the dumpster were unlocked (Dkt. No. 282 at 6, 11).

The Court concludes that, even if Skruck had manifested a subjective expectation of privacy in the dumpster, it is not one

society is prepared to accept as reasonable. He and other HSCT employees failed to take "affirmative steps...to exclude the public" from utilizing the dumpster.[3] Hall, 47 F.3d at 1096. Skruck may have intended to lock HSCT's dumpster every night (Dkt. No. 381 at 2; Dkt. No. 382 at 2). Unfortunately, his intention was not converted into action.

## IV.

The Court concludes that Skruck failed to carry his burden to show that the warrantless searches of HSCT's dumpster violated his Fourth Amendment rights. For these reasons, it **ADOPTS** the R&R (Dkt. No. 382), and **DENIES** Skruck's motions to suppress (Dkt. Nos. 363 and 381).

It is so **ORDERED**.

---

[3] The Court also notes that Skruck likely lacks standing to challenge the warrantless search. He did not own HSCT, and was merely a third-party employee or "partner" of Paglia who spent most of his time in the Buckhannon store. See Rakas v. Illinois, 439 U.S. at 134; see also United States v. Castellanos, 716 F.3d 828, 833 (4th Cir. 2013) ("Fourth Amendment rights 'may not be vicariously asserted.'") (internal citations omitted); Dkt. No. 384 at 2-4.

**USA V. JOHN SKRUCK** 1:12CR25-2

**ORDER ADOPTING REPORT AND RECOMMENDATION AND
DENYING DEFENDANT'S MOTIONS TO SUPPRESS (DKT NOS. 363 AND 381)**

The Court directs the Clerk of Court to transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: December 4, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE